## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA M. DALKE., EXECUTRIX OF THE     Case No.
ESTATE OF MARIE C. MILLS,
DECEASED,

          Plaintiff,                **<u>JURY TRIAL DEMANDED</u>**

    v.

JOHN J. KANE REGIONAL CENTERS –
SCOTT TOWNSHIP,

          Defendant.

### <u>COMPLAINT IN CIVIL ACTION</u>

AND NOW, comes Plaintiff, Donna M. Dalke, Executrix of the Estate of Marie C. Mills, deceased, and by and through her attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC and files this Complaint, averring as follows:

### THE PARTIES

1.     Plaintiff, Donna M. Dalke ("Plaintiff") is an adult individual who, at all times pertinent hereto, resided at 1395 Pennsylvania Avenue, Bridgeville, Allegheny County, Pennsylvania 15017.

2.     Plaintiff's decedent, Marie C. Mills ("Decedent") was an adult individual who, at the time of her death, resided at ManorCare, 113 West McMurray Rd., McMurray, Washington County, Pennsylvania 15317.

3.     On April 24, 2017, the Allegheny County Department of Court Records, Wills/Orphans' Court Division issued Letters of Testamentary to Plaintiff who was sworn in as the Executrix of Decedent's Estate.

4.      Defendant, John J. Kane Regional Centers – Scott Township ("Defendant") was and is a residential skilled nursing care and rehabilitation facility which was and is owned and operated by Allegheny County, Pennsylvania with its principal place of business located at 300 Kane Boulevard, Pittsburgh, PA 15243.  Plaintiff is asserting a professional liability claim against Defendant.

5.      At all times pertinent hereto, Defendant was acting by and through its authorized agents, servants, employees, representatives, staff members, and ostensible agents, including but not limited to the members of its staff who were on duty at the time of Decedent's falls referenced below and each of whom were then and there acting within the course and scope of their employment or apparent employment with and in furtherance of the business operations and for the financial gain and benefit of Defendant.

6.      Because Defendant is owned and operated by Allegheny County, Pennsylvania, at all times pertinent hereto, it was acting under color of state law.

**JURISDICTION AND VENUE**

7.      Jurisdiction is proper in this forum pursuant to 28 U.S.C. § 1331, as the instant case presents issues of federal law, and 28 U.S.C. § 1367, as the state law claims in this action (Counts I through III) are so related to the claim that is subject to original federal jurisdiction (Count IV) that it forms part of the same case or controversy under Article III of the United States Constitution.

8.      This action arises under the laws of the Commonwealth of Pennsylvania and the United States of America and is within the subject matter jurisdiction of this Honorable Court.

9.      The transaction and occurrences from which the subject action arises took place in the Western District of Pennsylvania.

10.     At all times pertinent hereto, Defendant maintained its principal place of business and was conducting business in the Western District of Pennsylvania.

11.     Because of its business operations being in in the Western District of Pennsylvania, Defendant is subject to personal jurisdiction in this Honorable Court.

12.     Venue for the subject action is proper in this Honorable Court.

## **NATURE OF THE ACTION**

13.     Decedent was born on November 30, 1928 and died on June 21, 2016 at the age of 87.

14.     The right to bring this action is conferred upon Plaintiff by virtue of the operation of the following laws:

    a)      On behalf of Decedent's Heirs: Provisions of the Wrongful Death Act of July 9, 1976, P.L. 586§I, 42 Pa CSA §8301, and the amendments thereto;

    b)      On behalf of Decedent's Estate: Provisions of the Survival Act of July 9, 1976, P.L. 508-586§II, 42 Pa CSA §8302, and the amendments thereto; and

    c)      All other applicable wrongful death acts, survival acts, fiduciary acts, statutes and the Pennsylvania Rules of Civil Procedure.

15.     No other actions for the injuries, damages, losses, and harm that Decedent suffered and which caused and/or contributed to her death have been commenced against Defendant, other than the instant action.

16.     The names of all persons entitled by law to recover damages for Decedent's wrongful death and their relationship to her are as follows:

    a)      Joseph C. Mills, Jr., son;

    b)      Thomas R. Mills, son;

    c)      Edward J. Mills, son; and

    d)      Donna M. Dalke, daughter.

("Decedent's Heirs")

17.     Plaintiff believes and therefore avers that Decedent made regular contributions to Decedent's Heirs in support of their financial well-being during their lifetimes up through the date of her death on June 21, 2016.

## BACKGROUND/FACTUAL HISTORY

18.     Plaintiff believes and therefore avers that, at all times pertinent hereto, Defendant owned and operated a residential skilled nursing care and rehabilitation facility which held itself open to the general public, including Decedent, as a skilled and competent medical institution that was capable of rendering full, complete, accurate, and safe medical care and treatment to Decedent that met or exceeded all applicable standards of care.

19.     Plaintiff believes and therefore avers that, at all times pertinent hereto, Defendant operated as a "long term care nursing facilities" and/or a "health care facility" as those terms are defined in 35 P.S. § 448.802a.

20.     Accordingly, Defendant was and is a "licensed professional" as that term is defined in 40 P.S. 1303.503.

21.     Plaintiff believes and therefore avers that, at all times pertinent hereto, Defendant operated as a "skilled nursing facility" as that term is defined at 42 U.S.C. § 1395i-3.

22.     Plaintiff believes and therefore avers that, at all times pertinent hereto, Decedent was a recipient of Medicaid benefits pursuant to 42 U.S.C. § 1396, *et seq*.

23.     On March 2, 2015, Decedent was admitted to Washington Commons Personal Care Home, 528 Dewey Avenue, Bridgeville, Allegheny County, Pennsylvania 15017, an assisted living facility, ("Washington Commons") with a diagnosis of severe dementia, depression, and hypertension.

4

24.     On October 20, 2015 and February 22, 2016, Decedent fell at Washington Commons.

25.     Shortly after the February 22, 2016 fall, Decedent was admitted to St. Clair Hospital, where she was diagnosed with a broken left hip and was forced to undergo surgery to replace her left hip and to install a pacemaker.

26.     Following the surgery, Decedent underwent extensive and painful physical therapy and rehabilitation.

27.     While recovering at St. Clair Hospital and due to her history of falls, as well as her severe dementia, Decedent was placed on 24-hour surveillance, with a hospital employee personally observing her every minute during her admission and she was also monitored via video camera and was protected from further injury by padding that was placed around her bed ("Precautions").

28.     On February 27, 2016, Decedent was transferred to Defendant's rehabilitation unit.

29.     Because Defendant had access to all of Decedent's pertinent medical and hospital records and had been briefed concerning Decedent's medical history and condition by the medical staff at St. Clair Hospital, it knew and/or should have known of Decedent's diagnoses, as well as the October 20, 2015 and February 22, 2016 falls, the severe and serious injuries Decedent sustained because of the latter fall, that Decedent was at high risk for additional falls, and that St. Clair Hospital had taken the Precautions to protect Decedent from further falls.

30.     Upon Decedent's admission to Defendant's facility, a Fall Risk Assessment was performed on Decedent which resulted in her receiving a score of 24.

31.     A score of 14 or greater means that the patient is at "Risk for Falling" and has the "Potential for Accidental Falling."

5

32.     In Decedent's Admission History and Physical it was noted that she was demented (advanced) and that after a syncopal episode she had fallen and fractured her left hip.

33.     It was noted throughout Decedent's chart that she was a "falls risk," required "maximum assistance," and "needed monitored 24/7."

34.     Despite possessing substantial evidence that Decedent had severe dementia and was a moderate to severe fall risk, tragically Defendant failed to establish and implement an adequate Care Plan for Decedent, including necessary and appropriate interventions that would have prevented falls and failed to take any of the Precautions, which Plaintiff believes represent the standard of care.

35.     Plaintiff believes and therefore avers that on February 28, 2016 a pharmacist employed by Defendant specifically advised Defendant and its staff that Decedent was on "several medications that could cause sedation and contribute to falls.

36.     Plaintiff believes and therefore avers that despite that warning Defendant continued to administer those medications to Decedent which, in turn, further altered Decedent's mental state, over-sedated her, and caused her to be unable to protect herself.

37.     Citing its "facility policy," Defendant also refused to allow Decedent to use a "lap buddy" fall prevention device, even though Decedent's rehabilitation therapist recommended the device on March 5, 2016 to help prevent additional falls.

38.     Plaintiff believes and therefore avers that, in fact, Defendant implemented few, if any precautions to protect Decedent from falls.

39.     Plaintiff believes and therefore avers that as of March 1, 2016, Defendant either had adopted and/or should have adopted and enforced rules, regulations, guidelines, procedures, protocols, and other directives designed to ensure the safety and well-being of patients at moderate

to high risk for falls, including Decedent ("Protocols").  Plaintiff does not have a copy of the Protocols in her possession and, thus, the reason that a copy is not attached hereto; however, she believes and therefore avers that Defendant has the original Protocols in its possession, custody and control.

40.    Even though Defendant and its medical, nursing and administrative staff knew and/or should have known of Decedent's severe dementia and moderate to high risk of falls and her other symptoms, condition and diagnoses, tragically Defendant failed to take adequate measures to prevent such a fall, including but not limited to activating the alarm on her bed, raising the rails on Decedent's bed, placing protective padding around Decedent's bed, properly administering and controlling Decedent's medications, allowing Decedent to use a "lap buddy" fall prevention device, or providing 24-hour surveillance of Decedent, including assigning a "sitter" to stay with Decedent whenever her family members were not present which Plaintiff believes and therefore avers constituted a violation of Defendant's Protocols and a deviation from the accepted standard of care given Decedent's condition.

41.    In fact, Plaintiff believes that Defendant consciously disregarded or failed to enforce one or more of its own Protocols and/or failed to adopt sufficient protocols and/or failed to develop and implement an adequate Care Plan to protect Decedent from the risk of falls.

42.    Plaintiff believes and therefore avers that Defendant's failures were due, at least in part, to its failure to maintain adequate staff to patient ratios and failure to employ skilled, trained and professional medical staff members who knew, understood and appreciated the severity of Decedent's medical condition, the level of assistance she required and who would establish and implement reasonable and necessary precautions to protect Decedent from falls.

43.     Plaintiff also believes and therefore avers that after each of Decedent's aforementioned falls, Defendant failed to adequately investigate each fall, failed to determine what caused each fall, and failed to establish and implement reasonable and necessary precautions to protect Decedent from falls.

44.     As a direct, proximate, and legal result of Defendant's negligence, carelessness and recklessness, by and through its medical, nursing and administrative staff, during her admission to Defendant's facility, Decedent suffered numerous falls, including falls on:

   a)     March 1, 2016 when she fell in her room next to her bed;

   b)     March 2, 2016 when she fell out of her wheelchair;

   c)     March 5, 2016 when she fell at the nurses' station which necessitated an x-ray of her surgically repaired left hip;

   d)     March 8, 2016 when she fell next to her bed resulting in a left periorbital laceration with moderate blood loss, for which she was re-admitted to St. Clair Hospital; and

   e)     March 15, 2016 when she fell and fractured her right ankle which necessitated another admission to St. Clair Hospital (for the third time in three weeks).

45.     Plaintiff believes and therefore avers that after each of Decedent's aforementioned falls, Defendant did not timely, properly, or completely activate and follow its own post-fall protocols or an appropriate post-fall protocol that it should have had in place, which should have included immediately notifying Decedent's family of each fall.

46.     Plaintiff believes and therefore avers that, because of Defendant's failure to abide by its post-fall protocols or an appropriate post-fall protocol that it should have had in place, including its failure to immediately notify any of Decedent's family members of the aforementioned falls, Decedent suffered additional injuries and a loss of life's enjoyment.

47.     Because of the March 15, 2016 fall, Decedent's right ankle was set and her ankle and leg were casted, she was confined to a wheelchair, and she subsequently underwent additional extensive and painful physical therapy and rehabilitation.

48.     Because of the aforementioned falls, Decedent suffered from extreme and excruciating pain that reduced her to a sedentary lifestyle for the remainder of her life, as well as decreased endurance and strength, and a substantial reduction in her mobility and dexterity, all of which grew progressively worse and continued until the time of her death on June 26, 2016.

49.     Plaintiff believes and therefore avers that the aforementioned falls and the corresponding injuries Decedent suffered caused or contributed to her death on June 26, 2016.

50.     As a direct, proximate, and legal result of the actions, inactions, errors, and omissions of Defendant, by and through its medical, nursing and administrative staff, which caused and/or failed to prevent the aforementioned falls, caused Decedent's sharp decline in health, and caused and/or contributed to Decedent's death, Plaintiff claims, on behalf of the Estate of Marie C. Mills, the following injuries, damages, losses, and harm suffered by Decedent between February 27, 2016 and the date of her death on June 21, 2016, pursuant to the Survival Act:

       a)     Injuries to her previously fractured and surgically repaired left hip;

       b)     A fractured right ankle that required setting and casting;

       c)     Injuries and trauma to a significant portion of her body, including her muscles, tissues, ligaments, blood vessels, arteries, and bones;

       d)     Bruises and contusions over a significant portion of her body;

       e)     Severe and serious internal injuries;

       f)     Shock and injuries to her nerves and nervous system;

       g)     Permanent disfigurement, scarring and physically impairment;

       h)     A significant loss of her strength, ambulatory capabilities, mobility, and dexterity;

i)      A severe limitation of her activities, including an inability to engage in her normal daily activities;

j)      A significant impairment of her general health, strength and vitality;

k)      An increased risk of future harm;

l)      A diminished life expectancy, and ultimate loss of life;

m)      Severe, extreme, and conscious physical pain, suffering, anxiety, depression, embarrassment, humiliation, emotional distress, mental anguish, inconvenience, a fear of death, and a loss of life's pleasures;

n)      A deprivation of the normal pleasures and joys of life;

o)      Lost retirement benefits and/or social security income; and

p)      Other severe and significant injuries, damages, losses, and harm.

51.      As a direct, proximate, and legal result of the actions, inactions, errors and omissions of Defendant, by and through its medical, nursing and administrative staff, which caused and/or failed to prevent the aforementioned falls, Decedent's health sharply declined and the injuries she suffered caused and/or contributed to her death, Plaintiff claims, on behalf of the Estate of Marie C. Mills, the following suffered by Decedent between February 22, 2016 and the date of her death on June 21, 2016, under the Wrongful Death Act:

a)      The loss of the services, assistance, guidance, counseling, companionship, society, consortium and other contributions which Marie C. Mills would have rendered during her lifetime;

b)      The hospital, medical and/or surgical expenses incurred in connection with Marie C. Mills' medical care and treatment;

c)      The permanent deprivation and loss of the financial support and all pecuniary benefits that Marie C. Mills would have conferred;

d)      Funeral and burial expenses;

e)      Expenses related to the administration of the Estate of Marie C. Mills; and

f)      Other losses and damages permitted by law.

**COUNT I**

**PROFESSIONAL NEGLIGENCE/CORPORATE LIABILITY/VICARIOUS LIABILITY**

52.    Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 51 above.

53.    At all times pertinent hereto, Defendant had a duty to ensure that all persons providing care within its facility were competent to provide that care.

54.    At all times pertinent hereto, Defendant had a duty to formulate, adopt, and enforce adequate rules, regulations, policies, procedures, and protocols to ensure quality care for all residents, including Decedent.

55.    At all times pertinent hereto, Defendant had a duty to formulate, adopt, and follow an appropriate treatment plan for Decedent.

56.    At all times pertinent hereto, Defendant had a duty to take appropriate precautions to protect Decedent and prevent her from falling.

57.    At all times pertinent hereto, Defendant and its agents, servants, employees, and representatives owed a duty to Decedent not to violate 18 Pa. C.S. § 2713, titled "Neglect of Care Dependent Person," which required it to refrain from abusing or neglecting Decedent.

58.    At all times pertinent hereto, Defendant and its agents, servants, employees, and representatives owed a duty to Decedent not to violate 35 P.S. § 10225.102, part of the "Pennsylvania Older Adults Protective Services Act," which required it to "assure the availability of protective services to all older adults in need of them," including Decedent, where such services "safeguard the rights of incapacitated older adults while protecting them from abuse, neglect, exploitation, and abandonment."

59.     At all times pertinent hereto, Defendant and its agents, servants, employees, and representatives owed a duty to Decedent not to violate the federally protected legal rights of any resident, including Decedent, and had a duty to comply with all provisions of the Omnibus Budget Reconciliation Act of 1987/Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, and the implementing regulations found at 42 C.F.R. § 483, *et seq.*

60.     The above statutes and regulations are designed and intended to protect the interests of persons like Decedent against the hazards she encountered and the harm she suffered while residing in Defendant's facility.

61.     Plaintiff believes and therefore avers that each of Decedent's falls and all of her corresponding injuries, damages, losses, and harm could have been prevented had Defendant activated the alarm on her bed, raised her bed rails, placed protective padding around her bed, properly administering and controlling Decedent's medications, allowing Decedent to use a "lap buddy" fall prevention device, and provided 24-hour surveillance of Decedent, including assigning a sitter to Decedent whenever her family members were not present, all of which were required based upon the accepted standard of care given Decedent's condition and are or should have been included in Defendant's Protocols.

62.     Decedent's severe, serious, and permanent injuries, damages, losses, and harm were the sole, direct, proximate, and legal result of the carelessness, recklessness, negligence, malpractice, and deviation from the standard of care of Defendant, by and through its authorized agents, servants, employees, representatives, staff members, and ostensible agents, generally and in the following particulars:

   a)     In holding itself out to the general public and specifically Decedent as a skilled nursing care facility;

   b)     In failing to develop, implement and follow an appropriate and comprehensive treatment plan for Decedent;

c)   In failing to properly and thoroughly assess, evaluate and comprehend Decedent's condition, particularly considering her history of falls and severe dementia;

d)   In failing to take necessary, sufficient and appropriate precautions to protect Decedent and prevent her falls;

e)   In failing to take the same Precautions that St. Clair Hospital took, which represented the appropriate standard of care;

f)   In failing to activate the alarm on Decedent's bed;

g)   In failing to raise the rails on Decedent's bed;

h)   In failing to provide 24-hour surveillance of Decedent, including assigning a sitter to Decedent whenever her family members were not present, all of which were required based upon the accepted standard of care given Decedent's condition;

i)   In failing to place protective padding around Decedent's bed;

j)   In failing to properly administer and control Decedent's medications;

k)   In failing to properly secure Decedent in her wheel chair via seatbelt or other safety device;

l)   In refusing to allow Decedent to use a "lap buddy" fall prevention device due to "facility policy," despite Decedent's rehabilitation therapist recommending the device on March 5, 2016 to help prevent additional falls;

m)   In continuing to over-prescribe mind-altering medication to Decedent despite being warned on February 28, 2016 by a pharmacist employed by Defendant that Decedent was on "several medications that could have additive sedation and contribute to falls;

n)   In failing to fully, properly and appropriately advise and warn Decedent and her family of her increased risk of falls;

o)   In failing to protect Decedent from reasonably foreseeable harm because of her condition;

p)   In causing Decedent to suffer an increased risk of harm;

q)   In causing Decedent to suffer an increased risk of complications and further injuries;

r)   In causing Decedent to suffer a diminished life expectancy;

13

s)      In causing Decedent to suffer great pain, suffering, inconvenience, embarrassment and mental anguish;

t)      In failing to hire, employ and maintain staff that possessed the requisite education, knowledge, training, skill and expertise to properly diagnose, treat and manage Decedent's condition;

u)      In failing to properly educate, train, instruct, and supervise their medical staff members, including those that were responsible for providing Decedent's medical care and treatment;

v)      In failing to properly supervise, direct and/or monitor the medical care and treatment that the nurses and other medical staff members provided to Decedent;

w)      In failing to formulate, adopt and enforce adequate rules, regulations, policies, procedures, and protocols to ensure that Decedent received all the medical care, treatment, and procedures that were necessary under the circumstances;

x)      In failing to formulate, adopt and enforce adequate rules, regulations, policies, procedures, and protocols that would have insured that adequate safety measures were taken to prevent Decedent from falling, particularly in light of her symptoms and diagnoses;

y)      In failing to follow and require that the nurses and other medical staff members who cared for Decedent followed and complied with any rules, regulations, policies, procedures, and protocols that Defendant may have formulated and adopted relative to patients like Decedent and to prevent patient falls;

z)      In failing to require that its agents, servants, employees, representatives, staff members, and other health care providers and ostensible agents reported the deficient, negligent, inadequate, and substandard medical care and treatment that Decedent received from its nurses and other medical staff members to supervisory and/or administrative staff who might have contacted consultants, specialists and/or experts to ensure that Decedent received the quality care to which she was entitled;

aa)     In failing to control the conduct of their staff members, nurses, and other medical providers who cared for Decedent, thereby rendering Defendant negligent under principles of *respondeat superior*, with the negligence of its agents, servants, employees, representatives, staff members, and other health care providers being automatically imputed to it;

bb)     In holding out to the general public, including Decedent, its staff members, nurses, and other medical providers who cared for Decedent as being their agents, servants, employees, and/or representatives, even if otherwise

14

independent contractors, thereby rendering Defendant liable to Decedent under principles of ostensible agency, particularly with respect to the acts and/or omissions as more specifically set forth herein;

cc)   In failing to ensure that their medical staff followed and complied with the policies, procedures and protocols established by Defendant for fall risk patients like Decedent;

dd)   In failing to inform Decedent and her family that the nurses and other medical providers who cared for Decedent lacked the education, training, knowledge, skill, and expertise necessary to properly protect her from falling while in their care;

ee)   In failing to possess the requisite education, training, knowledge, skill, and expertise that was necessary in order to prevent Decedent's falls and resulting injuries and death;

ff)   In failing to inform Decedent of their aforementioned acts and/or omissions; and

gg)   In failing to adhere to and provide medical care and treatment to Decedent in accordance with the standard of care within the medical community in which they practice.

63.   Defendant's aforementioned failures were purely motivated by financial reasons.

64.   Defendant's aforementioned conduct also constitutes negligence *per se*.

65.   Based upon the totality of the circumstances, Defendant's aforementioned conduct was intentional, malicious, willful, wanton, outrageous, and with malice aforethought or it was with reckless indifference to the rights, health and safety of Decedent and warrants the imposition of punitive damages in favor of Plaintiff and against Defendant.

66.   As a sole, direct, proximate, and legal result of the carelessness, recklessness, negligence, and malpractice of Defendant, corporately and through its agents, servants, employees, representatives and medical, nursing and administrative staff, thereby resulting in vicarious liability under principles of *respondeat superior* and ostensible agency, Decedent suffered the severe, serious and permanent injuries, damages, losses, and harm referenced above.

WHEREFORE, Plaintiff, Donna M. Dalke, Executrix of the Estate of Marie C. Mills, Deceased demands judgment in her favor and against Defendant, John J. Kane Regional Centers – Scott Township in an amount in excess of $75,000.00, together with punitive damages, interest, costs, expenses and such other relief as this Honorable Court deems appropriate.

## COUNT II

## SURVIVAL ACTION

67.     Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 66 above.

68.     Plaintiff brings this action on behalf of Decedent's estate under and by virtue of the Pennsylvania Judiciary Act 42 Pa. C.S. 8302, known as the Survival Statute, to recover all damages legally appropriate thereunder.

69.     Decedent did not bring any actions during her lifetime, nor has any other action been commenced on behalf of Decedent against Defendant herein.

70.     Plaintiff claims damages for the conscious pain and suffering, including mental and physical pain, suffering, and inconvenience; loss of life's pleasures and aggravation of pre-existing medical conditions; and expense of otherwise unnecessary hospitalizations undergone by Decedent, up to and including the time of her death, which was caused by Defendant's breach of duties, negligence, carelessness, and recklessness.

71.     Defendant knew or should have known that its conduct would cause and Decedent would suffer the aforementioned injuries, damages, losses, and harm.

72.     As a direct, proximate, and legal result of the carelessness, recklessness, negligence, and malpractice of Defendant, corporately and through its agents, servants, employees,

representatives and medical, nursing and administrative staff, Decedent has suffered the severe, serious and permanent injuries, damages, losses, and harm referenced above.

73.   Based upon the totality of the circumstances, Defendant's aforementioned conduct was intentional, malicious, willful, wanton, outrageous, and with malice aforethought or it was with reckless indifference to the rights, health and safety of Decedent and warrants the imposition of punitive damages in favor of Plaintiff and against Defendant.

WHEREFORE, Plaintiff, Donna M. Dalke, Executrix of the Estate of Marie C. Mills, Deceased, demands judgment in her favor and against Defendant, John J. Kane Regional Centers – Scott Township in an amount in excess of $75,000.00, together with punitive damages, interest, costs, expenses and such other relief as this Honorable Court deems appropriate.

## COUNT III

## WRONGFUL DEATH

74.   Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 73 above.

75.   Plaintiff brings this action on behalf of Decedent's estate under and by virtue of the Pennsylvania Judiciary Act 42 Pa. C.S. 8302, known as the Survival Statute, to recover all damages legally appropriate thereunder.

76.   Decedent did not bring any actions during her lifetime, nor has any other action been commenced on behalf of Decedent against Defendant herein.

77.   Plaintiff claims damages for the pecuniary losses suffered by Decedent's survivors by reason of her death, as well as for the reimbursement of hospital, nursing, medical, and funeral expenses, expenses of administration, and other expenses incurred in connection therewith.

78.     As a result of the death of Decedent, her survivors have been deprived of the companionship, comfort, aid, assistance, and society that would have been received from Decedent for the remainder of her natural life which Plaintiff claims as additional damages.

79.     As a direct, proximate, and legal result of the carelessness, recklessness, negligence, and malpractice of Defendant, corporately and through its agents, servants, employees, representatives and medical, nursing and administrative staff, Decedent has suffered the severe, serious and permanent injuries, damages, losses, and harm referenced above.

80.     Based upon the totality of the circumstances, Defendant's aforementioned conduct was intentional, malicious, willful, wanton, outrageous, and with malice aforethought or it was with reckless indifference to the rights, health and safety of Decedent and warrants the imposition of punitive damages in favor of Plaintiff and against Defendant.

WHEREFORE, Plaintiff, Donna M. Dalke, Executrix of the Estate of Marie C. Mills, Deceased, demands judgment in her favor and against Defendant, John J. Kane Regional Centers – Scott Township in an amount in excess of $75,000.00, together with punitive damages, interest, costs, expenses and such other relief as this Honorable Court deems appropriate.

## COUNT IV

## DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE VIA 42 U.S.C. § 1983

81.     Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 80 above.

82.     Defendant is an agent of the Commonwealth of Pennsylvania and at all times pertinent hereto was acting under color of state law.

18

83.     Defendant is bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. *See* 42 U.S.C. § 1396r.

84.     Defendant is also bound generally by the OBRA/FNRHA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

85.     The specific detailed regulatory provisions, as well as the statutes in question create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

86.     Defendant, in derogation of the above statute and regulations, and as a custom, practice and policy, failed to comply with the aforementioned regulations as follows:

a)      By failing, as a custom, practice and policy, to care for patients, including Decedent, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.15 and 42 U.S.C. § 1396r(b)(1)(A);

b)      By failing, as a custom, practice and policy, to promote the care of patients, including Decedent, in a manner and in an environment, that maintained or enhanced their dignity as required by 42 C.F.R. § 483.15 and 42 U.S.C. § 1396r(b)(1)(A);

c)      By failing, as a custom, practice and policy, to develop a comprehensive care plan for patients, including Decedent, as required by 42 C.F.R. § 483.20 and 42 U.S.C. § 1396r(b)(2)(A);

d)      By failing, as a custom, practice and policy, to provide patients, including Decedent, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental, and psychosocial well-being, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(3)(A);

e)      By failing, as a custom, practice and policy, to periodically review and revise a patient or resident's written plan of care by an interdisciplinary team after each of the resident or patient's assessments as described within 42 U.S.C. 1396r(b)(3)(A) and required by § 1396r(b)(2)(C);

    f)      By failing, as a custom, practice and policy, to conduct an assessment of a patient or resident, such as Decedent, in accordance with 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition as required by § 1396r(b)(3)(C)(i)(II);

    g)      By failing, as a custom, practice and policy, to use the results of the assessments required above in developing, reviewing, and revising the resident's plan of care as required by 42 U.S.C. § 1396r(b)(3)(D);

    h)      By failing, as a custom, practice and policy, to provide nursing and related services that would allow patients or residents, including Decedent, to attain or maintain the highest practicable physical, mental, and psychosocial well-being, as required by 42 U.S.C. § 1396r(b)(4)(A);

    i)      By failing, as a custom, practice and policy, to ensure that its facility was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Decedent, to maintain or attain their highest practicable level of physical, mental, and psychosocial well-being as required by 42 C.F.R. § 483.75 and 42 U.S.C. §§ 1396r(d)(1)(A)-(B);

    j)      By failing, as a custom, practice and policy, to ensure that its facility was complying with federal, state, and local laws and professional standards that apply to professionals providing services to residents, including Decedent, and in operating such a facility, as required by 42 U.S.C. § 1396r(d)(4)(A); and

    k)      By failing, as a custom, practice and policy, to ensure that its administrator and director of nursing promptly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Decedent, in derogation of 42 C.F.R. § 483.75.

87.     As a direct, proximate, and legal result of Defendant's actionable derogation of its regulatory and statutory responsibilities as described above, Decedent suffered severe, serious and permanent injuries, damages, losses, and harm.

88.     As a direct, proximate, and legal result of Defendant's actionable derogation of its regulatory and statutory responsibilities as described above, in addition to compensatory and punitive damages, Plaintiff is also entitled to an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, Donna M. Dalke, Executrix of the Estate of Marie C. Mills, Deceased, demands judgment in her favor and against Defendant, John J. Kane Regional Centers – Scott Township in an amount in excess of $75,000.00, together with punitive damages, attorneys' fees, interest, costs, expenses, and such other relief as this Honorable Court deems appropriate.

Respectfully Submitted,

THE FARNETH LAW GROUP, LLC

By: _____
GEORGE R. FARNETH II, ESQUIRE (#53914)
*Attorneys for Plaintiff, Donna M. Dalke, Executrix*
*of the Estate of Marie C. Mills, Deceased*